**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MAPCO EXPRESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-cv-1235** |
| | ) | **Judge Nixon** |
| **INTERSTATE ENTERTAINMENT, INC.,** | ) | **Magistrate Judge Bryant** |
| **JARRELL'S OF PENSACOLA, INC.,** | ) | |
| **ROBERT BREECE, and KENNETH** | ) | **JURY DEMAND** |
| **JARRELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

Pending before the Court is Defendant Jarrell's of Pensacola, Inc. ("JOP") and Kenneth

Jarrell's (collectively, "Defendants") Motion for Summary Judgment (Doc. No. 40) ("Defendants'

Motion"), filed with a supporting Memorandum (Doc. No. 41) and a Concise Statement of Facts

(Doc. No. 42). Plaintiff Mapco Express, Inc. has filed a Response to Defendants' Motion

("Response") (Doc. No. 43) and a Response to Defendants' Concise Statement of Facts (Doc. No.

45). Plaintiff also filed a Concise Statement of Additional Material and Disputed Facts (Doc. No.

46), to which Defendants responded (Doc. No. 51). Defendants subsequently submitted a Reply to

Plaintiff's Response. (Doc. No. 50.) Defendants also filed a Motion in Limine (Doc. No. 62), to

which Plaintiff has not responded. Also pending before the Court are Plaintiff's Motions to

Ascertain Status (Doc. Nos. 65 & 67), which are **GRANTED**.

For the reasons stated herein, the Court **GRANTS** Defendants' Motion in Limine and

**GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

### A.      *Factual History*[1]

Plaintiff owns and operates approximately 440 convenience stores throughout the Southeastern United States.  (Doc. No. 44-1 at 6.)  In early 2006, John Hoogacker, the president of Interstate, contacted Plaintiff to discuss putting together a program for Interstate to place DVDs and CDs in Plaintiff's stores.  Interstate promoted itself to Plaintiff by promising to distribute first-quality entertainment media, including popular and recent DVDs, compact discs, video games, and cassettes: "We offer 1st quality products, a great DSD [direct store delivery] program, and excellent follow-up on customer purchases."  Based on those assurances, Plaintiff and Interstate entered into a Vendor Agreement ("Agreement") on January 26, 2007, for Interstate to provide Direct Store Delivery ("DSD") Service of those products for two years.

Mapco's Field Merchandiser, Ross Torrento, was the first to notice that products provided by Interstate were old DVDs and CDs rather than new releases.  Interstate did not provide the promised first-quality, recent entertainment product.  When stores were serviced, Interstate would not rotate the out-of-date product from Plaintiff's shelves and replace it with more recent or different titles.  Within months of the start of the program with Interstate, Mr. Torrento voiced concerns at a marketing meeting about the quality of the products that were being put in Plaintiff's stores.

Kenneth Jarrell is the president and owner of JOP.  (Doc. No. 44-5 at 6.)  JOP services convenience stores in Florida, Georgia, Alabama, and Mississippi with nonfood items like

---

[1] Unless otherwise noted, all facts in this section are undisputed and are taken from Plaintiff's Response to Defendants' Concise Statement of Facts (Doc. No. 45) and Defendants' Response to Plaintiff's Statement of Additional Facts (Doc. No. 51).

sunglasses, energy products, rack toys, gloves, etc. (*Id.*) Mr. Jarrell met Mr. Hoogacker in early 2007, and began talking to Mr. Hoogacker about purchasing Interstate in April. (*Id.* at 7-8.) Mr. Jarrell understood Interstate's business to be selling CDs, DVDs, cassettes, and VHS tapes to convenience stores. Mr. Hoogacker and Mr. Jarrell discussed Interstate's client base, including Plaintiff, prior to JOP's asset purchase of Interstate. Mr. Jarell did not contact Plaintiff to inquire into Plaintiff's relationship with Interstate prior to purchasing its assets.

JOP acquired Interstate's assets on October 16, 2007. (Doc. No. 43 at 5.) Mr. Jarrell hired Mr. Hoogacker as a National Sales Manager as part of the asset purchse. Mr. Jarrell sent Mr. Hoogacker to meet with Plaintiff to disclose the sale and new company. Mr. Hoogacker met with Mr. Booker and told him that Interstate had been purchased by a Florida company and that Mr. Hoogacker had been hired by the new company. Mr. Booker asked Mr. Hoogacker about the need to execute a new contract, and Mr. Hoogacker replied that "it would be business as usual" and no new contract was needed. Mr. Booker did not ask the identity of the new company or whether the acquisition was a stock or asset purchase, and he never became aware of a company called Jarrell's of Pensacola, Inc. However, he assumed that the new company would continue to provide the same level of service as Interstate had. Mr. Booker does not know if there was any difference in the quality of the products before and after JOP's acquisition of Interstate.

JOP began selling entertainment products to Plaintiff, servicing Plaintiff's stores and receiving payments from Plaintiff. JOP used the trade name and previous logo of Interstate on invoices to Plaintiff, substituting JOP's Florida address for Interstate's former one. Plaintiff sent checks made payable to Interstate to JOP's Florida address, which JOP subsequently deposited.

JOP also hired Bob Breece, Interstate's main liaison between Interstate and Plaintiff, and

made him the contact person for Plaintiff's account. (Doc. No. 43 at 6.) After JOP's acquisition of Interstate, Mr. Breece used a business card identifying his employer as Interstate and listing JOP's Florida address. On July 2, 2008, Plaintiff's manager for general merchandise, Nanette Bolek, met with Mr. Breece and expressed her concern for "the quality of the product, the pricing of the product, the amount of inventory in the stores, and asked what they could do as a vendor . . . to make the program correct." At the time of the meeting, Ms. Bolek had been involved with the DVD/CD program for two months and was unsure how long the issues with quality, amount of inventory and pricing had been a problem for Plaintiff. She did know which of the inventory was purchased before and after JOP's acquisition of Interstate.

Plaintiff sent a letter to JOP on August 8, 2008, providing notice of Plaintiff's potential termination of the Agreement. The letter asserted that JOP was refusing to take back any of the products or issue Plaintiff credits for returned and damaged inventory. Plaintiff's letter stated that JOP was in breach of the Agreement, but that the Agreement would remain in place if JOP began complying with its terms. Plaintiff's letter concluded that Plaintiff would deem the Agreement to be terminated if JOP did not honor it.

By its terms, the Agreement was set to terminate on January 31, 2009. Plaintiff began liquidating the products on August 22, 2008 (Doc. No. 43 at 10), five months prior to the termination date.

### B.  *Procedural History*

On November 11, 2008, Plaintiff filed a Complaint against Defendants in the Chancery Court of Davidson County, alleging breach of contract, fraud, and violation of the Tennessee Consumer Protection Act (TCPA), Tenn. Code Ann. §§ 47-18-104(8), (9), & (27). (Doc. No. 1-1.)

Defendants subsequently removed the case to this Court on December 31, 2008, on the grounds of diversity jurisdiction. (Doc. No. 1.)

On January 27, 2009, JOP filed a Motion to Dismiss the Complaint. (Doc. No. 6.) On February 24, 2009, Plaintiff filed an Amended Complaint (Doc. No. 12) and a Response to JOP's Motion to Dismiss (Doc. No. 13). On March 24, 2009, Mr. Jarrell filed a separate Motion to Dismiss (Doc. No. 17), to which Plaintiff responded on April 7, 2009 (Doc. No. 19).

On June 23, 2009, Plaintiff moved for entry of default against Defendant Interstate Entertainment ("Interstate") (Doc. No. 21), and the Clerk of the Court entered default pursuant to Federal Rule of Civil Procedure 55(a) on July 14, 2009 (Doc. No. 23). On August 10, 2009, the Court received a letter from Mr. Hoogacker, the former president of Interstate, denying all allegations against Interstate and noting that Mr. Hoogacker had sold Interstate's books of business to Mr. Jarrell and JOP in October of 2007, whereupon Mr. Jarrell and JOP agreed to open a new company called Interstate Entertainment of Florida, Inc. (Doc. No. 26.) Mr. Hoogacker concluded: "I don't see how we can be liable for anything." (*Id.*)

On December 21, 2009, this Court denied both Mr. Jarrell's and JOP's Motions to Dismiss. (Doc. No. 30.) Plaintiff then moved on January 7, 2010, to amend and/or correct its Complaint in order to add a claim of successor liability against JOP. (Doc. No. 31.) While this motion was pending, Defendants moved for summary judgment on February 19, 2010 (Doc. No. 40), and Plaintiff filed its Response on March 10, 2010 (Doc. No. 43). Defendants filed a Reply to Plaintiff's Response on March 17, 2010. (Doc. No. 50.)

On March 15, 2010, Magistrate Judge Bryant granted Plaintiff's Motion to Amend/Correct (Doc. No. 48), and Plaintiff filed its second Amended Complaint (Doc. No. 49).

On September 27, 2010, Defendants filed a Motion in Limine to exclude parol evidence relating to the Agreement (Doc. No. 62), to which Plaintiff did not respond. Plaintiff has filed two Motions to Ascertain Status of Defendants' Motion for Summary Judgment on November 24, 2010, and July 1, 2011. (Doc. Nos. 65 & 67.)

## II. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is genuine if a reasonable factfinder could find

for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the Court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Matsushita*, 475 U.S. at 249-50.

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Id.* at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.*

## III.    ANALYSIS

### A.    *Defendants' Motion in Limine*

Defendants move *in limine* to exclude any parol evidence related to the Agreement. (Doc. No. 62.) Defendants draw the Court's attention to Paragraph 16 of the Agreement which provides:

> Entire Agreement.  This Agreement and the Exhibits attached hereto constitute the entire agreement of the parties with respect to the matters stated herein, and there are no promises or undertakings, whether written or oral, other than those stated herein.

(Doc. No. 49-1 at 4.) Exhibit B to the Agreement, which is incorporated into the Agreement by reference, also states, "This contract, upon signature by both parties, will supercede any and all previous contracts between Interstate Entertainment Inc. and Mapco Express, Inc." (*Id.* at 8.)

Plaintiff has not filed a response opposing Defendants' Motion in Limine. According to Local Rule 7.01(b), failure to file a response to a motion indicates that there is no opposition. Further, under Tennessee law, when a written contract contains a provision like those in the Agreement, there is a presumption "that the document accurately reflects the complete and final agreement of the parties." *Tidwell v. Morgan Building Sys., Inc.*, 840 S.W.2d 373, 375 (Tenn. Ct. App. 1992). Accordingly, the Court **GRANTS** Defendants' Motion in Limine and will not consider

parol evidence relating to additional terms of the Agreement.

### B.    *Personal Liability of Kenneth Jarrell*

Defendants' Motion first asserts that Kenneth Jarrell is not a proper defendant in an individual capacity and should be dismissed from this action.  (Doc. No. 41 at 2.)  Defendants argue that Mr. Jarrell was at all relevant times acting in his capacity as an employee and agent of JOP and did not have any personal contact with Plaintiff.  (*Id.*)  Plaintiff's Response states that Plaintiff "non-suits its claim against Kenneth Jarrell in his individual capacity."  (Doc. No. 43 at 10 n.2.)  However, as Defendant notes, the Federal Rules of Civil Procedure do not provide for unilateral dismissal by a plaintiff after the opposing party serves a motion for summary judgment.  Fed. R. Civ. P. 41(a)(1).  The Court must therefore evaluate whether Mr. Jarrell is a proper defendant under the summary judgment standard.  The Court finds that there is no genuine issue of material fact as to Mr. Jarrell's personal liability in this matter.  There is no evidence that Mr. Jarrell interacted with Plaintiff as an individual and outside the scope of his positions as owner and president of JOP.  Accordingly, the Court **GRANTS** summary judgment with respect to Defendant Kenneth Jarrell on all claims.

### C.    *Breach of Contract*

Plaintiff's Complaint alleges that Defendants are liable for breaching the Agreement.  To succeed on a claim for breach of contract under Tennessee common law, a plaintiff must prove three elements: (1) the existence of a contract, (2) breach of the contract, and (3) damages resulting from the breach.  *Life Ctrs. of Am., Inc. v. Charles Town Assoc. L.P.*, 79 F.3d 496, 514 (6th Cir. 1996).  Defendants argue they are entitled to summary judgment because there was no contract between Plaintiff and JOP, there was no breach of the Agreement, and Plaintiff unilaterally

terminated the Agreement.

             1.  Existence of a Contract

Defendants first argue that Plaintiff has not established the first element of a breach of contract claim because no contract existed between Plaintiff and JOP. (Doc. No. 41 at 2.) Defendants refute Plaintiff's claim that a contract existed between Plaintiff and JOP by virtue of an assignment of Interstate's obligations to JOP. (*Id.*) Plaintiff correctly notes that this Court previously addressed this issue in its Order denying Defendants' Motions to Dismiss. (Doc. No. 30.) The Court held that Plaintiff's Complaint alleged sufficient facts to support a claim that JOP assumed Interstate's obligations under the Agreement. (*Id.* at 6.) However, the Court's findings on a motion to dismiss are not dispositive at the summary judgment stage. When ruling on a motion to dismiss, a court is required to assume the facts alleged in the complaint in favor of the plaintiff. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). Although the Court must still construe any factual inferences in favor of Plaintiff, Plaintiff now bears the burden of providing specific evidence of a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324. Thus, the Court must consider the issue in light of the evidence that the parties have presented since the resolution of the Motions to Dismiss.

It is undisputed that JOP continued to sell and deliver products to Plaintiff after it acquired Interstate and that Plaintiff paid for those products, continuing performance of the Agreement. However, Defendants argue that there was no assignment by Interstate to JOP, because the Agreement requires Plaintiff's express written consent for assignment, and Plaintiff never gave such written consent. (Doc. No. 41 at 3.) Plaintiff responds that it waived the requirement of express written consent such that a valid assignment could have occurred (Doc. No. 43 at 10), but

Defendants contend that there was no legal waiver (Doc. No. 41 at 3). Defendants cite the depositions of Mr. Booker and Ms. Bolek in support of its assertion that Plaintiff's personnel did not know that JOP existed and, therefore, could not have intentionally and unequivocally waived its right to give express consent to the assignment. (*Id.*)

A waiver is a "voluntary relinquishment of a known right and may be established by expressed declarations or acts manifesting an intent not to claim the right." *Hill v. Goodwin*, 722 S.W.2d 668, 671 (Tenn. Ct. App. 1986) (citing *Tenn. Asphalt Co. v. Purcell Enters., Inc.*, 631 S.W.2d 439, 444 (Tenn. Ct. App. 1981)). "However, whether the waiver is expressed or implied, it must be intentional." *Id.* Plaintiff argues that it manifested its intent to waive the consent requirement by continuing to do business after JOP bought Interstate. (Doc. No. 43 at 12.) Nevertheless, Mr. Booker testified that he did not ask who the purchasing company was and had never heard of the company JOP, and he did not know when the agreement with Interstate was allegedly assigned to JOP. (Doc. No. 42-1 at 17, 30.) Plaintiff continued to pay for the products with checks made payable to Interstate, rather than to JOP. (Doc. No. 44-2 at 26.)

In spite of these facts, the Court finds that Plaintiff has created a genuine dispute as to whether it intentionally waived its right to consent to an assignment so that a valid assignment to JOP may have occurred. It is undisputed that Mr. Booker knew that another company, located in Florida, purchased Interstate, and that Mr. Booker inquired about the need to execute a new contract with the purchasing company. (Doc. No. 51 at 4.) Plaintiff also presents the deposition testimony of Mr. Hardy, who testified that he also knew a Florida company had bought Interstate. (Doc. No. 44-4 at 11.) It is undisputed that Plaintiff continued to perform under the Agreement after Mr. Booker was notified of the sale by submitting payment, and that Plaintiff accordingly changed the

address to which it sent payments.  (*Id.*)  Drawing the reasonable inferences in favor of Plaintiff, the Court cannot conclude that there is no genuine dispute as to whether these actions reflect an intent to waive the consent requirement, thereby creating a genuine dispute of material fact as to whether JOP was a party to the Agreement by assignment.  Further, although the parties have not raised the argument as to the breach of contract claim, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff and JOP had an implied contract under the terms of the Agreement, as discussed in Section III.F.1, *infra*.

      2.  <u>Breach of Contract</u>

Defendants next argue that, even if a valid assignment existed so that JOP became a party to the Agreement, JOP did not breach the Agreement.  (Doc. No. 41 at 4.)  Defendants assert that there is no requirement in the Agreement regarding the quality of the products that were to be provided to Plaintiff.  (*Id.*)  Defendants argue that they therefore cannot have breached the Agreement by failing to provide first-quality products.  (*Id.*)

Defendants focus on one paragraph of Plaintiff's Amended Complaint that references JOP's alleged failure to deliver first-quality media inventory.  (Doc. No. 50 at 5.)  Defendants ignore the rest of the paragraph, however, which also alleges JOP's failure to "provide acceptable inventory services."[2]  (Doc. No. 49 ¶ 12.)  Further, the Amended Complaint alleges breach of contract for failure "to provide adequate service and provide credits for product as required by the Agreement." (Doc. No. 5 ¶ 15.)  The Amended Complaint more specifically alleges that JOP failed to honor its obligations under the Agreement, including its obligation "to provide adequate service, rotate the

---

[2] The Court notes that Plaintiff filed its latest Amended Complaint after Defendants moved for summary judgment; however, the pertinent language remained unchanged from the Amended Complaint filed before Defendants' Motion (*see* Doc. No. 12).

CD and DVD stock to remove out-of-date product regularly, provide 1st quality CDs and DVDs, and provide credit for unsold product." (*Id.* ¶ 9.) Plaintiff's breach of contract claim is not predicated solely on JOP's failure to provide first-quality products, nor is Plaintiff now attempting to "change its allegations" in its opposition to summary judgment as Defendant asserts (Doc. No. 50 at 5). The proper issue is whether Plaintiff has established a genuine dispute as to these claims.

As the Court has granted Defendants' Motion in Limine to exclude parol evidence regarding the Agreement, *supra* Section III.A, the Court confines its analysis to the Agreement's written terms. Plaintiff denotes two provisions of the Agreement that JOP has allegedly breached. (Doc. No. 43 at 13.) First, a provision of Exhibit A to the Agreement states:

> Vendor is responsible for properly rotating its products. Product dates should be regularly checked and out-of-date and close dated products should be removed. Documentation of proper credits should be left at the store and the appropriate product should be removed during the same visit that the product was pulled.

(Doc. No. 41-2 at 6.) A provision of Exhibit B to the Agreement states, "Interstate Entertainment will provide DSD every 3 weeks and check in & out with the manager or authorized assistant on each visit." (*Id.* at 8.) Both Exhibits are incorporated into the Agreement by reference. (*Id.* at 2.) Plaintiff argues that JOP breached these provisions because the quality of the product was not as contemplated, Plaintiff's stores were infrequently serviced and inventory piled up. (Doc. No. 43 at 13.) Plaintiff cites the depositions of Plaintiff's personnel in which they testified to the existence of these problems. (*Id.*)

Defendants argue in their Reply that the provision of Exhibit A is inapplicable to DSD service because it is only relevant to perishable goods, which have expirations dates and can therefore become "out-of-date," as opposed to products such as CDs and DVDs. (Doc. No. 50 at 5.) Defendants note that Exhibit A is entitled "General Terms and Conditions," and allege that Plaintiff

uses the form for all its vendors, evidenced by Paragraph 7(d) of the Agreement, which states that certain vendor services may include engineering, architecture and construction. (*Id.*) Defendants assert that the provision of Exhibit A referencing out-of-date products could not apply to such professional services, proving that not all of Exhibit A's provisions are intended to apply to each of Plaintiff's vendors. (*Id.*) Finally, Defendants argue that the term "out-of-date" is unreasonably vague as applied to products like CDs and DVDs. (*Id.* at 6.)

The Court rejects Defendants' argument that the Exhibit A provision was not intended to apply to the DSD service. The relevant requirement in Exhibit A appears under the heading, "The following conditions are required by all Vendors servicing any and all MAPCO Stores." (Doc. No. 41-2 at 12.) However, the Court finds merit in Defendants' argument regarding the provision's ambiguity. In determining the enforceability of contract provisions, a court must consider the definitiveness with which the terms are stated, and contractual ambiguity arises when provisions may reasonably be read to have more than one meaning. *Huber v. Calloway*, No. M2005-00897-COA-R3-CV, 2007 WL 2089753, at *3-4 (Tenn. Ct. App. July 12, 2007). When a provision leaves a material term open, it is generally too vague to be enforceable. *Id.* at *4. It must spell out the obligation of the parties "'with sufficient definiteness that it can be performed.'" *Four Eights, LLC v. Salem*, 194 S.W.3d 484, 487 (Tenn. Ct. App. 2005) (quoting *United Am. Bank of Memphis v. Walker*, 1986 WL 11250, at *2 (Tenn. Ct. App. Oct. 10, 1986)). The Second Restatement of Contracts, which the court cites in *Huber*, further clarifies that "[t]he terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) Contracts §33(2), at 92 (1981).

Nonetheless, the invalidation of a contract is not encouraged, and "a contract that lacks

definitiveness of terms will be enforced if the terms can be reasonably ascertained from the language of the contract." *Huber*, 2007 WL 2089753, at *4. A court should not relieve parties from their obligations because they later prove to be burdensome, but if a court determines that a provision is ambiguous, it should construe the provision against the drafting party. *Id.* at *5. Resolving the issue of a contract provision's ambiguity and its resulting enforceability is a matter of law and not fact. *Campora v. Ford*, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003).

With respect to the specific vendor service of delivering entertainment products such as DVDs and CDs, the Court finds that the Exhibit A provision is too vague to be enforced against JOP or for the Court to find that JOP could have breached it by not delivering products that were as current as Plaintiff preferred. The term "out-of-date and close dated products" is ambiguous as applied to DVDs and CDs, because reasonable minds may differ as to its meaning, *Huber*, 2007 WL 2089753 at *4, and the provision as a whole does not provide sufficient definiteness so that it can be performed, *Four Eights, LLC*, 194 S.W.3d at 487. There is no indication of how current the CDs or DVDs must be, or when they become "out of date" so that JOP would know when Plaintiff expected them to be rotated. The provision therefore does not provide a basis for determining when or if JOP has breached it. Restatement (Second) Contracts § 33(2). Nor can the Court ascertain the intended terms from the rest of the Agreement, as it does not mention the quality of the products anywhere else. The Court does not seek to relieve JOP from any obligations it may have assumed under the Agreement regarding the products that it delivered to Plaintiff; however, the single provision is too vague to "provide a basis for determining the existence of a breach and for giving an appropriate remedy," and is therefore unenforceable. *Id.* Because there is no other requirement in the Agreement that can be construed as requiring JOP to deliver a certain quality of

product, there is no genuine dispute of material fact as to whether JOP breached the Agreement by failing to do so, and Plaintiff cannot defeat summary judgment on this theory.

The second provision of the Agreement that Plaintiff argues JOP breached states, "Interstate Entertainment will provide DSD every 3 weeks and check in & out with the manager or authorized assistant on each visit." (Doc. No. 41-2 at 8.) The Court finds that a genuine dispute of material fact exists as to whether JOP breached this provision. Joey Hardy, a field manager for Plaintiff, testified in his deposition that as problems with the DSD service increased, "the less and less service we got at the stores." (Doc. No. 44-4 at 10.) He further stated that Plaintiff "went for months without any service and the product sitting in the stores." (*Id.* at 25.) Ken Mullins similarly testified that eventually the product "just stopped coming altogether," and that there was no routine or regular service. (Doc. No. 44-6 at 6, 7.) It is unclear from the depositions whether Mr. Hardy or Mr. Mullins perceived these problems after the asset purchase, when JOP was providing the service, but Defendant has not responded to these allegations and the Court must make all reasonable factual inferences in favor of Plaintiff. As discussions about terminating the Agreement occurred several months after JOP began servicing Plaintiff's stores, it is not unreasonable to infer that the infrequent service was continuing at that time. Accordingly, a genuine dispute exists as to whether JOP breached the Agreement's provision regarding frequency of service.

### 3. Unilateral Termination

Finally, Defendants assert that, if the Agreement was in effect and binding on JOP, Plaintiff unilaterally terminated it and cannot, therefore, seek damages for its breach. (Doc. No. 41 at 5.) Defendants argue that Plaintiff terminated the Agreement through a letter in August of 2008, after which Plaintiff marked down all inventory by thirty percent and later removed the product from its

store to a warehouse in Alabama. (*Id.*) Defendants content that Plaintiff "had no justification for taking these actions and cutting short the Vendor Agreement by four to five months." (*Id.*)

"A contracting party may terminate the contract when the other party (1) is wholly unable to complete the contract; (2) manifests an intent to abandon the contract; (3) manifests an intent to no longer be bound by the contract; or (4) commits fraud on the party seeking to terminate the contract." *McClain v. Kimbrough Constr. Co., Inc.*, 806 S.W.2d 194, 197 (Tenn. Ct. App. 1990) (internal citations omitted). This standard has been construed to mean that a party to a contract "may be excused from performing its remaining obligations by a previous, uncured material breach of the other party." *Dunn v. Matrix Exhibits, Inc.*, No. M2003-02725-COA-R3-CV, 2005 WL 2604048, at *4 (Tenn. Ct. App. Oct. 13, 2005) (citing generally *McClain*, 806 S.W.2d 194). As there is a genuine dispute of material fact as to whether JOP breached the Agreement, the Court cannot conclude that Plaintiff had "no justification" for any unilateral termination that it may have effected or that Plaintiff is barred from seeking damages.

For the foregoing reasons, the Court **DENIES** summary judgment as to Plaintiff's breach of contract claim, with the foregoing restrictions.

### D.    Fraud

Plaintiff's Amended Complaint alleges that "JOP and/or Mr. Breece" committed fraud by intentionally misrepresenting to Plaintiff that JOP would continue to provide DSD service according to the terms of the Agreement and that JOP would deliver first-quality products. (Doc. No. 49 ¶ 22.) A Tennessee common law fraud claim has four basic elements: (1) the existence of an intentional misrepresentation of a material fact; (2) knowledge that the representation was false or reckless disregard for its truth; (3) the plaintiff reasonably relied on the misrepresentation and

suffered damage; and (4) the misrepresentation relates to an existing or past fact. *Murvin v. Cofer*,

968 S.W.2d 304, 310 (Tenn. Ct. App. 1997). With regard to the fourth prong, "existing or past

fact" does not include an opinion or conjecture as to a future event. *Van Eman v. Keuffel & Esser of

N.J., Inc.*, No. C.A. 87-359-II, 1988 WL 60493, at \*5 (Tenn. Ct. App. June 15, 1998) (citing *Ga.

Marble Co. v. Standard Tile Co.*, 86 S.W.2d 429, 432 (Tenn. Ct. App. 1935)). An alternative claim

of promissory fraud exists where the misrepresentation embodies a promise of future action without

the present intention to carry out the promise. *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct.

App. 1990).

Defendants argue that JOP is entitled to summary judgment because Plaintiff cannot

establish the elements of a fraud claim. Defendants assert that neither JOP nor any of its

representatives made misrepresentations of material fact, and Plaintiff cannot prove that it suffered

damage on account of any such misrepresentations. (Doc. No. 41 at 6.) In support of its fraud

claim, Plaintiff's Response focuses entirely on Mr. Hoogacker's conversation with Mr. Booker in

October of 2007. (Doc. No. 43 at 15-16.) Defendants argue, however, that none of Mr.

Hoogacker's statements during the conversation with Mr. Booker rise to the level of factual

misrepresentations. (*Id.*) Mr. Booker testified that Mr. Hoogacker told him Interstate had been

purchased by a company out of Florida and that Plaintiff did not need a new contract with the

purchasing company, because the DSD service would be "business as usual." (Doc. No. 44-3 at 6-

7.) Mr. Booker further testified that he asked Mr. Hoogacker whether business as usual would

include "same service, same product, everything" and that Mr. Hoogacker responded "yes." (*Id.* at

6.)

With regard to Mr. Hoogacker's first statement, it is undisputed that JOP, a Florida

company, purchased Interstate's assets; Mr. Hoogacker's statement to that effect is not false. Plaintiff also does not argue or offer evidence that there was a need to execute a new contract. In fact, Plaintiff relies on the continuing effect of the Agreement for its breach of contract and successor liability claims. Plaintiff contends, however, that Mr. Booker's statement that the DSD service would continue "business as usual" was a misrepresentation in light of testimony by Mr. Jarrell that JOP could not have ever afforded to rotate out all of the "garbage" product left by Interstate and that he thought it would be unreasonable to do so. (Doc. No. 43 at 16.) Plaintiff claims that "JOP's agent Hoogacker, likewise, knew JOP could never afford and would not be willing to properly rotate the existing entertainment product." (*Id.*) Plaintiff reads further into Mr. Hoogacker's statement, arguing, "Hoogacker told Booker that the new company would comply with the terms of the Vendor Agreement by providing good quality products and good service required thereunder, including the obligation to rotate out-of-date inventory and credit MAPCO for the out-of-date inventory." (Doc. No. 43 at 16.)

Despite the fact that the conversation made no specific reference to the Agreement, the Court must construe factual inferences in favor of Plaintiff and will therefore construe Mr. Hoogacker's statement as promising continuation of performance according to its terms, because Mr. Hoogacker did state that there was no need for a new contract between Plaintiff and JOP. However, there is insufficient evidence to create a genuine dispute of fact on whether Mr. Hoogacker's statement was false at the time he made it. Plaintiff relies entirely on Mr. Jarrell's deposition testimony as evidence that JOP never intended to service Plaintiff's stores properly. (Doc. No. 43 at 16.) The Court finds that Plaintiff construes Mr. Jarrell's testimony unfairly. In the portions of Mr. Jarrell's testimony that Plaintiff cites, Mr. Jarrell testified about his reaction to a

vendor agreement that Mr. Booker presented to him in 2008, several months after the asset purchase. (Doc. No. 44-5 at 24.) Mr. Jarrell testified that the vendor agreement alarmed him "because of the things they were asking a vendor to do," such as "buying back all of the inventory that [Plaintiff] had bought from somebody else . . . They was wanting me to sign a contract agreeing to buy back garbage that they bought from somebody else." (*Id.*) Later, Mr. Jarrell stated that the vendor agreement asked him to do things that he felt were "totally unreasonable." (*Id.* at 26.)

It is unclear to the Court what the contents of that vendor agreement were, or whether it was identical to the original Agreement between Plaintiff and Interstate. In either case, Mr. Jarrell was testifying about his reaction to seeing an agreement several months after the asset purchase, not the capacity of JOP to perform under the Agreement or his intentions to do so at the time that JOP took over the DSD service, when Mr. Hoogacker promised "business as usual." Without additional evidence, there is no genuine dispute of material fact as to whether Mr. Hoogacker's statement was false and, therefore, a misrepresentation.

Further, it appears to the Court that Mr. Hoogacker's statement that the service would continue "business as usual" does not concern an existing fact, but rather future events – specifically, a promise to perform in a certain manner after JOP's asset purchase of Interstate. In fact, Plaintiff's fraud claim is based entirely on JOP's alleged representations that it would provide a certain level of service and quality of product without the intention to do so. Plaintiff's claim, therefore, more appropriately falls under promissory fraud analysis rather than traditional fraud. *See Van Eman*, 1988 WL 60493, at *5 (conjecture as to a future event does not satisfy the fourth prong of a traditional fraud claim); *Stacks*, 812 S.W.2d at 592 (finding that a plaintiff's fraud claim was in fact one of promissory fraud, because it was based upon the defendant's promise of future

conduct or action).

Promissory fraud must be proven by more than a subsequent failure to perform as promised or to keep "the subjective surmise or impression of the promise." *Id.* at 593. Again, the only evidence that Plaintiff has brought to the Court's attention is Mr. Jarrell's deposition testimony, and the same analysis of that testimony applies here. Mr. Jarrell was not testifying to the capacity of JOP to perform under the Agreement or his intentions to do so at the time that JOP took over the DSD service, when Mr. Hoogacker promised "business as usual." As Plaintiff has offered no other evidence to support the claim that JOP had no intention to provide a promised level of service, the Court finds there is no genuine dispute of material fact as to whether JOP committed promissory fraud.

Plaintiff's Response further argues that Interstate made fraudulent representations that it would provide first-quality product with no intent to comply with its representation, evidenced by the fact that it provided poor quality product from the beginning of the DSD service. (Doc. No. 43 at 17.) The Court assumes that Plaintiff makes this argument in order to assert JOP's successor liability for Interstate's alleged fraud; however, Plaintiff's Complaint does not bring a fraud claim against Interstate (*see* Doc. No. 49 ¶¶ 21-23).

The Court finds that Mr. Hoogacker's statements do not constitute fraudulent misrepresentations, and Plaintiff has not called the Court's attention to evidence that any other of JOP's representatives made fraudulent misrepresentations. Accordingly, the Court **GRANTS** Defendants' Motion on Plaintiff's fraud claim as to Defendant JOP.

### E. *Tennessee Consumer Protection Act*

Plaintiff alleges that Defendants' misrepresentations and failure to provide first-quality

products also violate the TCPA, Tenn. Code Ann. § 47-18-104(b)(9) and (27). (Doc. No. 49 at 7.) The scope of the TCPA is broader than common-law fraud; the burden of proof on the plaintiff is lower, as claims are not limited to misrepresentations that are fraudulent or willful. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005). Under the TCPA, a party may be liable for any "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." § 47-18-104(a). Section 47-18-104(b) provides a list of "unfair or deceptive acts or practices," including "advertising goods or services with intent not to sell them as advertised." § 47-18-104(b)(9). It also provides catch all liability for "engaging in any other act or practice which is deceptive to the consumer or to any other person." § 47-18-104(b)(27). Additionally, in order to succeed on a TCPA claim, a plaintiff must show that the defendant's conduct caused "an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." Tenn. Code Ann. § 47-18-109(a); *Tucker*, 180 S.W.3d at 115. Because the TCPA does not define "deceptive" or "unfair," the standards used to determine whether a specific act or representation is "deceptive" or "unfair" are questions of law for the Court; whether the act or representation is unfair or deceptive is a question of fact. *Id.*

Defendants again argue they are entitled to summary judgment because JOP never made any representations to Plaintiff as to the product or type of product it would provide to Plaintiff. (Doc. No. 41 at 8.) Defendant asserts that JOP thus did not advertise any goods or services differently from how they were delivered in violation of section 47-18-104(b)(9). (*Id.* at 8.) Defendant further argues that none of its representations to Plaintiff rise to the level of a deceptive act or practice under the TCPA's catch all provision. (*Id.*) Finally, Defendants contend that Plaintiff has no evidence to support its alleged damages after JOP purchased Interstate in October of 2007.

With regard to JOP's liability,[3] Plaintiff's Amended Complaint alleges that the products were not first-quality, new products as JOP, Mr. Breece, and/or Mr. Jarrell represented they would be. (Doc. No. 49 at ¶ 26.) It further alleges that JOP, Mr. Breece, and/or Mr. Jarrell knew at the time they made the representations that they would not deliver first-quality, new products, making the representations deceptive. (*Id.*) In its Response, Plaintiff again relies on Mr. Hoogacker's conversation with Mr. Booker in which Mr. Hoogacker denied the necessity of a new contract and assured Mr. Booker that the DSD service would continue "business as usual." (Doc. No. 43 at 19.) Plaintiff once more asserts that Mr. Hoogacker's statement constituted a promise to perform under the terms of the Agreement, and that Plaintiff relied on this representation in deciding to continue doing business with JOP to its detriment because JOP "failed to comply with those terms by failing to provide first quality product." (*Id.*) Again, Plaintiff construes Mr. Hoogacker's statement in conjunction with Mr. Jarrell's deposition testimony, which Plaintiff argues is evidence that JOP could not afford to rotate the out-of-date product properly and never intended to do so. (*Id.*)

The Court finds that Plaintiff has not established a genuine dispute as to JOP's liability under section 47-18-104(b)(9). As a district court in this Circuit noted, the term "advertised" is not defined in the TCPA, and Tennessee courts have not considered what conduct amounts to advertising. *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 694 F. Supp. 2d 888, 914 (W.D. Tenn. 2010), *modified*, 2010 WL 3925261 (W.D. Tenn. Sept. 29, 2010). The district court looked to the dictionary definition of "advertising" and concluded that advertising

---

[3] Plaintiff's initial argument for its TCPA claim states that Interstate advertised itself as providing first-quality products and great service but did not provide the promised level of products or service. (Doc. No. 43 at 18-19.) JOP and Mr. Jarrell do not dispute Interstate's liability as part of their current Motion for Summary Judgment, and the Clerk of Court has previously entered default against Interstate (Doc. No. 23). Accordingly, the Court finds it unnecessary to discuss Interstate's liability in deciding this Motion.

involves calling commodities or services to the attention of the public, especially by paid announcements. *Id.* Similar to the current case, the plaintiff's claim in *Carbon Processing* was based in part on the defendant's alleged failure to sell a product of a certain level of quality. *Id.* The court concluded that the plaintiff had failed to allege a claim under section 47-18-104(b)(9) because it did not allege activity on the part of the defendant that constituted "advertising," as the defendant did not call its business to the attention of the public "or otherwise engage[] in any activity that might be construed as advertising." *Id.* Similarly, here, Mr. Hoogacker's statement was made privately to Mr. Booker as part of an existing business relationship, not to the public as an advertisement for JOP's goods or services. The Court finds Mr. Hoogacker's statement to Mr. Booker alone can in no way be construed as "advertising," and JOP cannot be held liable under section 47-18-104(b)(9).

The Court next addresses Plaintiff's claim under section 47-18-104(b)(27), the TCPA's catch all provision for "engaging in any other act or practice which is deceptive to the consumer or to any other person." A deceptive act or practice is "'one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact.'" *Morrison v. Allen*, 338 S.W.3d 417, 439 (Tenn. 2011) (quoting *Tucker*, 180 S.W.3d at 116). As the Court understands Plaintiff's TCPA argument, it is ultimately based on JOP's failure to comply with the terms of the Agreement. As previously discussed, the Court must make reasonable inferences in favor of Plaintiff, and the Court therefore infers that Mr. Hoogacker's statement represented that JOP would comply with the terms of the Agreement. However, "[a] breach of contract or warranty is not in and of itself a deception, misrepresentation or unfairness under the [TCPA]." *Office Furniture & Related Servs., Inc. v. United Constr. Corp.*, No. M2003-02126-

COA-R3-CV, 2005 WL 378707, at *5 (Tenn. Ct. App. Feb. 16, 2005) (quoting *Hall v. Hamblen*, 2004 WL 1838180, at *4 (Tenn. Ct. App. Nov. 6, 2002)). Plaintiff must therefore establish a genuine dispute as to its TCPA claim beyond evidence of JOP's alleged subsequent failure to perform under the Agreement; that is, Plaintiff must establish evidence that Mr. Hoogacker's statement was deceptive. *Morrison*, 338 S.W.3d at 439.

Plaintiff has failed to meet this burden. First, as discussed above, the Court finds that Mr. Hoogacker's statement seems to relate to JOP's future service, not a current fact that could be false or misleading. Even if the Court assumes that the "matter of fact" was Mr. Jarrell's intention regarding JOP's future service, the Court has already determined that there is insufficient evidence to establish a genuine dispute as to Mr. Jarrell's intentions at the time of the asset purchase and Mr. Hoogacker's statement to Mr. Booker. For these reasons, the Court finds that there is no genuine dispute of material fact as to whether Mr. Hoogacker's statement was deceptive. The Court **GRANTS** Defendants' Motion on Plaintiff's TCPA claim as to Defendant JOP.

### F.    *Successor Liability*

Plaintiff has brought claims for breach of contract and violation of the TCPA against Interstate, and filed its most recent Amended Complaint in order to add a claim for successor liability against JOP. (Doc. No. 49.) Specifically, Plaintiff alleges that JOP is the legal successor of Interstate and is therefore responsible for all of Interstate's liabilities arising out of the Agreement. (Doc. No. 49 at 8.) The parties initially disputed what law applies to Plaintiff's claim of successor liability; however, the parties now agree to apply Tennessee law for the purpose of resolving the current summary judgment motion. (Doc. No. 50 at 11 n.1.)

Generally, a corporation that purchases the assets of another corporation does not

automatically become liable for the selling company's obligations.  *Johnson v. Tanner-Peck, LLC*,
No. W2009-02454-COA-R3-CV, 2011 WL 1330777, at *13 (Tenn. Ct. App. Apr. 08, 2011).  This
rule is subject to four exceptions: (1) where the purchasing corporation expressly or implicitly
agrees to assume the selling corporation's liabilities; (2) where the transaction amounts to a
consolidation or merger of the two corporations; (3) where the purchasing corporation is a mere
continuation of the selling corporation; and (4) where the transaction is entered into fraudulently, in
order to escape liability for the obligations of the selling corporation.  *Id.* at *13 n.20 (citing
*Hopewell Baptist Church v. Se. Mfg. Co.*, No. E2000-02699-COA-R3-CV, 2001 WL 708850, at *4
(Tenn. Ct. App. June 25, 2001)).  Plaintiff alleges that a genuine dispute exists as to whether the
first three exceptions apply, and the Court will address them in turn.

      1.    <u>Implied Assumption of Liabilities</u>

    Regarding the first exception, Plaintiff argues that JOP implicitly assumed Interstate's
liabilities with respect to the Agreement by delivering products to Plaintiff's stores and accepting
checks maybe payable to Interstate.  (Doc. No. 43 at 21.)  Plaintiff states, "Having accepted the
benefits of the Vendor Agreement, JOP also accepted Interstate Entertainment's liabilities and
obligations."  (*Id.*)  Plaintiff also asserts that JOP implicitly assumed Interstate's liabilities by
picking up and crediting Plaintiff for some of the inventory that Interstate placed in Plaintiff's stores
prior to the asset purchase, and later ceasing to do so.  (*Id.*)

    Defendants respond that there is no evidence supporting an implied agreement that JOP
would assume any of Interstate's liabilities.  (Doc. No. 50 at 12.)  Defendants assert that there is no
Tennessee case law on how to evaluate implicit assumption of liabilities, and directs the Court
instead to law on implied contracts.  (*Id.* at 11.)  Indeed, Tennessee law on the implicit assumption

of liabilities in the context of asset purchases is limited, and the Tennessee Court of Appeals has analyzed the issue as one of implied contracts. *See Hopewell Baptist Church*, 2011 WL 708850, at *5. In *Hopewell*, the court explained that Tennessee law recognizes two types of implied contracts: contracts implied in fact and contracts implied in law. *Id.* Contracts implied in fact arise when the parties demonstrate mutual assent or intent to contract, while contracts implied in law are created by law without the assent of the liable party. *Id.* at *5-6. A party seeking to recover under the theory of contract implied in law must prove "'[a] benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Id.* at *6 (quoting *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)).

The Court finds that there exists a genuine dispute as to the material fact of whether JOP entered into a contract, implied in fact or in law, that would impose successor liability on it. It is undisputed that JOP did not execute a new contract with Plaintiff after the asset purchase, continued to provide the same service to Plaintiff as Interstate had provided, and continued to receive from Plaintiff the payments that were required under the Agreement. Defendants also admit that JOP credited Plaintiff for some of the product that Interstate put in Plaintiff's stores before the asset purchase. (Doc. No. 50 at 12.) These facts are sufficient to create a genuine dispute as to whether JOP implicitly assumed Interstate's liabilities under the Agreement on either theory of implied contract—either that JOP's actions constituted assent to an implied contract in fact, or that JOP is liable under an implied contract in law because it received and appreciated a benefit from Plaintiff in the form of monetary payments.

2.     *De Facto* Merger

With respect to the second exception, Plaintiff argues that a genuine dispute of material fact exists as to whether JOP's purchase of Interstate constitutes a *de facto* merger under Tennessee law. (Doc. No. 43 at 22.)  In support, Plaintiff cites the undisputed facts that JOP hired both the owner and manager of Interstate, acquired a non-compete agreement from Mr. Hoogacker, and used Interstate's intellectual property, including its name and logo, to do business.  (Doc. No. 43 at 22.)

In a *de facto* merger, "'there is a sale of substantially all of one corporation's assets in exchange for the stocks and bonds of the purchasing corporation.'"  *Signature Combs Inc. v. United States*, 331 F. Supp. 2d 630, 641 (W.D. Tenn. 2004) (quoting *Jennings Neff & Co. v. Crystal Ice Co.,* 159 S.W. 1088, 1089 (Tenn. 1913)); *see also IBC Mfg. Co. v. Velsicol Chem. Corp.*, No. 97-5340, 1999 WL 486615, at *3 (6th Cir. July 1, 1999).  In a *de facto* merger, as opposed to a legal merger, the original company maintains its legal entity, despite retaining no assets and going out of business.  *IBC Mfg. Co.*, 1999 WL 486615, at *3; *Signature Combs Inc.*, 331 F. Supp. 2d at 641.

JOP paid for Interstate's assets in cash rather than stock; however, Plaintiff argues that this does not preclude a finding that a *de facto* merger occurred.  (Doc. No. 43 at 23.)  Plaintiff urges the Court to take a less stringent approach to the *de facto* merger doctrine.  (*Id.*)  Plaintiff cites *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827 (W.D. Tenn. 2006), in which the district court noted that the doctrine is not well defined in Tennessee and declined to dismiss a complaint for failure to allege an assets-for-stock transaction.  *Id.* at 846.  Relying on the reasoning of another court in this Circuit, the court explained:

> A rule mandating the presence of all of the "hallmarks" of a *de facto* merger or always requiring an assets-for-stock transaction would be too rigid, as it would likely except some "transaction[s] that result [] in the dissolution of the predecessor corporation and [that] [are] in the nature of a total absorption of the previous

business into the successor." Such a rule would dilute the *de facto* merger doctrine, which recognizes transactions that are mergers in fact without an official declaration.

*Id.* (quoting *Cytec Indus., Inc. v. B.F. Goodrich*, 196 F. Supp. 2d 644, 658 (S.D. Ohio 2002)). Plaintiff argues that "the same reasoning should apply here as the evidence establishes that JOP took over Interstate Entertainment's entire business and Interstate Entertainment ceased to exist." (Doc. No. 43 at 23.)  Defendants respond that expanding the *de facto* merger doctrine in this way is inappropriate.  (Doc. No. 50 at 13.)  Defendants caution that such an expansion would have a chilling effect on corporate transactions.  (*Id.*)

The Court declines to adopt the reasoning of *Carrier Corp.* in this instance.  The Court notes that the same district court that decided *Carrier Corp.* granted summary judgment as to successor liability only two years earlier, in part because there was no evidence that the alleged successor company transferred stocks or bonds to the original company and, therefore, there was no *de facto* merger.  *Signature Combs, Inc.*, 331 F. Supp. 2d at 641.  Thus, the interpretation of Tennessee law on this issue is, at best, inconsistent.  Further, the litigation in *Carrier Corp.* was at the motion to dismiss stage, unlike *Signature Combs* and the instant action.  The Court finds that in the absence of any indication that Tennessee courts would modify their well-established rule requiring an assets-for-stock transaction, it must follow the longstanding rule, which the court in *Carrier Corp.* itself acknowledged.  *Carrier Corp.*, 406 F. Supp. 2d at 845; *see also Jennings Neff & Co.,* 159 S.W. 1088 at 1089; *IBC Mfg. Co.*, 1999 WL 486615, at *3.

Plaintiff asserts, however, that even if the Court follows the traditional rule regarding *de facto* mergers, the portion of the asset purchase agreement in which Mr. Hoogacker would receive a quarterly bonus of JOP's gross sales is "tantamount to an ownership interest in JOP" – in other

words, it is the equivalent of Mr. Hoogacker, the former owner of Interstate, receiving JOP stock in exchange for Interstate's assets.  (Doc. No. 43 at 23.)  Plaintiff's conclusion is in contention with JOP's express intent, evidenced by the asset purchase agreement itself, which states, "Nothing in this agreement shall be construed as granting Mr. Hoogacker stock options, ownership, or placing him as an officer of the buying corporation."  (Doc. No. 49-2 at 2.)  Plaintiff has cited no law to support a conclusion that sharing profits with an employee automatically gives the employee ownership interest of a company.  In fact, longstanding Tennessee jurisprudence indicates otherwise.  *See, e.g.*, *H.T. Hackney Co. v. Robert E. Lee Hotel*, 300 S.W. 1, 1 (Tenn. 1927) ("Mere profit sharing is not an infallible test by which to determine the existence of a partnership.").  If the shared profits are in exchange for compensation for services, any presumption of an ownership interest is entirely rebutted.  *Id.*  Plaintiff has offered no evidence that JOP's agreement to share a portion of its profits with Mr. Hoogacker was in exchange for any consideration other than his services as National Sales Manager.  In light of the lack of evidence to this effect or that Mr. Hoogacker had any duties as an officer or rights as a partial owner of JOP, as well as JOP's express intent not to give Mr. Hoogacker any ownership interest, the Court finds that the profit-sharing arrangement does not suffice to establish a *de facto* merger.  Accordingly, there is no genuine dispute of material fact as to JOP's successor liability under the *de facto* merger doctrine, and Plaintiff cannot defeat summary judgment on this theory.

      3.    <u>Mere Continuation</u>

      Regarding the third exception, Plaintiff argues that JOP was a mere continuation of Interstate because Interstate transferred its assets to JOP, JOP continued Interstate's business, Interstate ceased to exist, and Mr. Hoogacker became National Sales Manager for JOP.  (Doc. No.

43 at 23.)  An acquiring corporation will be deemed a mere continuation of the acquired company if: "(1) a corporation transfers its assets; (2) the acquiring corporation pays less than adequate consideration for the assets; (3) the acquiring corporation continues the selling corporation's business, (4) both corporations share at least one common officer who was instrumental in the transfer, and (5) the selling corporation is left incapable of paying its creditors." *IBC Mfg. Co.*, 1999 WL 486615, at *3; *see also Cricket Comm'ns, Inc. v. Talk Til You Drop Wireless, Inc.*, No. 3:09-128, 2009 WL 2850687, at *4 (M.D. Tenn. Sept. 1, 2009).

Defendant contends, and the Court agrees, that there is no genuine dispute as to Plaintiff's mere continuation theory.  Defendant notes that JOP had been in business for many years prior to acquiring Interstate, Mr. Jarrell had owned JOP the entire time, JOP adequately compensated Interstate for its assets, and Mr. Hoogacker did not become an officer of JOP.  (Doc. No. 41 at 9-10; Doc. No. 50 at 13.)  Indeed, Plaintiff has offered no evidence to create a genuine dispute as to several of the necessary factors for mere continuation.

Plaintiff cites *Great American Insurance Company v. Potter*, No. 4:04-cv-112, 2006 WL 2854386 (E.D. Tenn. Oct. 3, 2006), in which the district court found that a genuine issue of material fact existed with respect to whether an insurance company was merely a continuation of a former agency, *id.* at *3-4.  The court based its conclusion on the facts that the former agency ceased to exist, all of the former agency's business was passed to the successor company, and the principal of the former agency served as an agent and independent contractor for the successor company to ensure the continuing operation of the purchased company.  *Id.*  However, the court did not acknowledge and does not appear to have applied the five-factor test for mere continuation.

When another district court in this Circuit did expressly apply the factors, it found that the

plaintiff had not established a genuine issue of material fact as to mere continuation and granted summary judgment. *Signature Combs Inc.*, 331 F. Supp. 2d at 641. The court explained that the plaintiff had not submitted sufficient evidence on the five factors and stated, "At the least, there is no evidence indicating that any asset transfer occurred for less than adequate consideration or that [the original company] was left incapable of paying its creditors." *Id.* In the instant case, Plaintiff has similarly failed to produce any evidence of these two factors, or evidence that both corporations share a common officer, as the asset purchase indicates that Mr. Hoogacker became an employee but not an officer of JOP after the asset purchase. Plaintiff has failed, therefore, to create a genuine dispute as to whether JOP is a mere continuation of Interstate, and cannot defeat summary judgment on this theory.

The Court **GRANTS in part** Defendant's Motion as to Plaintiff's claim of successor liability on the theories of *de facto* merger and mere continuation, and **DENIES in part** Defendant's Motion as to Plaintiff's claim of successor liability on the theory of implied assumption of liabilities.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. Defendant Kenneth Jarrell is hereby **DISMISSED** from this action.

It is so ORDERED.

Entered this_____11ᵗʰ_____day of August, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-31-